# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

## CIVIL NO. 1:07CV310

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>THE WINNING TEAM, INC., d/b/a )<br>ARBY'S, )<br>)<br>Defendant. )<br>) | **MEMORANDUM AND<br><u>O R D E R</u>** |

**THIS MATTER** is before the Court on Defendant's timely filed objections to the Memorandum and Recommendation filed by the Magistrate Judge on September 4, 2008. Plaintiff has filed no objections to the Memorandum and Recommendation.

## I. BACKGROUND

A thorough factual summary of this case is set forth in the Memorandum and Recommendation. **Memorandum and Recommendation, filed September 4, 2008, at 4-14.** Therefore, this

Court hereby incorporates by reference the previous factual description and will discuss additional facts as needed for consideration of the Memorandum and Recommendation and the specific objections filed by Defendant.

Plaintiff's complaint alleges Defendant committed violations of Title VII of the Civil Rights Act of 1964 by (1) subjecting employees Melissa Jackson and Holly Payne[1] to sexual harassment in the workplace based on their female sex, *see* Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a); and (2) retaliating against Melissa Jackson by terminating her for engaging in the protected activity of complaining about the alleged sexual harassment, *see* Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).  **See Complaint, filed September 26, 2007, at 2-3.**  Defendant filed a motion for summary judgment and supporting memorandum on June 27, 2008, contending that Plaintiff had failed to show any issue of material fact to support the Title VII claims and sought summary judgment as a matter of

---

[1] Holly Payne married during the course of this action and is now known as Holly Russell.  **Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum"), filed July 11, 2008, at 2.**

law. **See Fed. R. Civ. P. 56.** Plaintiff responded in opposition and Defendant filed a reply on July 21, 2008.

The Magistrate Judge recommended summary judgment be granted as to Plaintiff's Title VII claim with respect to Holly Russell; and that summary judgment be denied as to the remaining Title VII claims concerning Melissa Jackson. **Memorandum and Recommendation, *supra*, at 27.** Defendant's object to the Magistrate Judge's recommendation that summary judgment be denied as to Plaintiff's Title VII claims pertaining to Melissa Jackson. **See Defendant's Objections to Memorandum and Recommendation of Magistrate Judge ("Defendant's Objections"), filed September 19, 2008.**

## II.  STANDARD OF REVIEW

**A.  Defendant's Objections to Recommendations**

A party may file written objections to a magistrate judge's memorandum and recommendation within ten days after being served with a copy thereof. **28 U.S.C. § 636(b)(1).** "Any written objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections." ***Thomas v.***

*Westinghouse Savannah River Co.*, 21 F. Supp. 2d 551, 560 (D.S.C. 1997); *see also, Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) ("Parties filing objections must specifically identify those findings objected to."). "Frivolous, conclusive or general objections need not be considered by the district court." *Battle*, 834 F.2d at 421. General or conclusive objections result not only in the loss of *de novo* review by the district court, but also in waiver of appellate review. *Tyler v. Beinor*, 81 F. App'x 445, 446 (4th Cir. 2003); *United States v. Woods*, 64 F. App'x 398, 399 (4th Cir. 2003). If proper objections are made, a district court will review the objections under a *de novo* standard. **28 U.S.C. § 636(b)(1).** Where no objection is made, however, the Court need "'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), *cert. denied*, 126 S. Ct. 1033 (2006) (quoting Fed. R. Civ. P. 72, Advisory Committee note).

**B.    Summary Judgment**

Summary judgment is appropriate when there is no genuine issue of material fact, and judgment for the moving party is warranted as a matter

of law.  **Fed. R. Civ. P. 56(c).**  "A genuine issue [of fact] exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Shaw v. Stroud*, **13 F.3d 791, 798 (4th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).**  In considering a motion for summary judgment, the Court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party.  *Id.*

By reviewing substantive law, the Court may determine what matters constitute material facts.  *Anderson*, **477 U.S. at 248.**  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  "The party seeking summary judgment has the initial burden to show a lack of evidence to support the nonmoving party's case."  *Shaw*, **13 F.3d at 798.**  If that showing is made, the burden then shifts to the nonmoving party who must convince the court that a triable issue does exist.  *Id.*  A "mere scintilla of evidence" is not sufficient to defeat a motion for summary judgment.  *Id.*

Accordingly, in considering the facts of the instant case for purposes of this motion, the Court will view the record in the light most favorable to Plaintiff, the nonmoving party.

## III.  DISCUSSION

A.	**Plaintiff's Title VII Claims as to Holly Russell**

As previously noted, no objections were filed with regard to the Magistrate Judge's recommendation that Defendant's motion for summary judgment be granted as to the Title VII claim concerning Holly Russell. The Court has reviewed the record and finds that the Magistrate Judge's proposed findings of fact are supported by the record and that the proposed conclusions of law are consistent with current case law with regard to the Title VII claims of Holly Russell.  Accordingly, the Court hereby accepts the Magistrate Judge's Recommendation that Defendant's motion for summary judgment be granted as to Plaintiff's Title VII claim concerning Holly Russell.

B.	**Plaintiff's Remaining Title VII Claims**

Defendant contends the Magistrate Judge erred in denying summary judgment with respect to Plaintiff's Title VII claims of hostile work environment and retaliation concerning Melissa Jackson.  Defendant "objects to multiple findings in the Memorandum and Recommendation" and moves for summary judgment on these remaining claims.

**Defendant's Objections,** *supra***, at 3**. This Court will review *de novo* those findings that are necessary to the resolution of the motion for summary judgment and specifically objected to by Defendant. Defendant advances the following objections:

1. The alleged sexual harassment was neither severe or pervasive;

2. Defendant maintained a widely disseminated policy prohibiting harassment;

3. Defendant's employees were aware of and understood the sexual harassment policy and took advantage of it;

4. With the exception of one reported incident, Jackson unreasonably failed to report incidents of harassment, thereby failing to take advantage of the preventative or corrective opportunities provided by the Defendant or to avoid harm otherwise;

5. Once the Defendant knew or should have known of the alleged sexual harassment of Jackson, it took prompt remedial action;

6. The Defendant's decision to terminate Jackson's employment was based on a legitimate nonretaliatory motive; [and]

7. The record is devoid of evidence of pretext.

*Id*. **at 3-4.**

**1.     Hostile Work Environment**

Under Title VII, to prevail on a claim of hostile work environment, a plaintiff must prove that (1) the conduct was unwelcome, (2) the harassment was based on the sex of the alleged victim, (3) the harassment was sufficiently pervasive or severe to create an abusive working environment or alter the conditions of the alleged victim's employment, and (4) that some basis exists for imputing liability to the employer.  ***Ocheltree v. Scollon Prods. Inc.,*** **335 F.3d 325, 331 (4th Cir. 2003) (citing *Spicer v. Va. Dep't of Corr.* 66 F.3d 705, 710 (4th Cir. 1995)).**

Defendant did not object to the Magistrate Judge's finding that Defendant's employee, Anthony Hendrix, engaged in behavior that was unwelcome conduct nor to the finding that the harassment at issue was based on the fact that Jackson is female.  After a careful review of the record, the undersigned finds that the Magistrate Judge's proposed findings of fact are supported by the record, that the proposed conclusions of law are consistent with current case law, and there is no error in the Magistrate Judge's conclusions on these issues.  **See Memorandum and Recommendation,** ***supra*,** **at 17-18.**

Defendant contends the Magistrate Judge erred in concluding that Hendrix's actions in this case were sufficiently severe or pervasive to support this element of the Title VII claim. **Defendant's Objections, *supra*, at 7-12.** There are both objective and subjective components that must be assessed when considering the severe or pervasive element. ***Ocheltree*, 335 F.3d at 333 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).** First, the undersigned will examine the facts that must be taken in the light most favorable to Plaintiff.

Jackson testified that she and Anthony Hendrix were both general managers of separate Arby's restaurants in the Buncombe County area. **See Exhibit 9, Deposition of Melissa Jackson, *attached to* Plaintiff's Memorandum, at 35.** Jackson and Hendrix often spoke on the phone or in person about sales, employee matters, and other matters pertaining to their respective restaurants. However, the nature of these frequent phone calls changed in September 2004, when Jackson received a phone call from Hendrix wherein he made "a pretty lewd comment over the phone" that was overheard by another Arby's employee, then assistant manager Robin Dunn. ***Id*. at 35, 44-45.** Jackson testified that she did not complain at the time about the phone call, but she "just couldn't believe what [she]

was hearing." *Id*. **at 45.** Phone calls of a sexually explicit nature from Hendrix to Jackson continued from September 2004 until May 2005.[2] Further, Jackson testified that Hendrix would walk past her on occasion while in the restaurant and make unwanted contact by brushing against her buttocks. *Id*. **at 51**.

In late April or May 2005, she was in her office speaking with another manager on the telephone when she heard laughter behind her. She turned around and observed Hendrix with his penis in his hands. *Id.* Jackson testified she told the other manager, "Oh my God, I've got to go," and hung up the telephone. *Id*. She then told Hendrix to get out of her restaurant. *Id.* Within 48 hours or so of this event, Jackson relayed this incident to Robin Dunn, who then convinced Jackson to inform Jimmy Phillips, the District Manager. *Id*. **at 54-55.** Jackson met with Phillips in mid-May 2005 and told him about Hendrix exposing himself and also about the sexually explicit, September 2004 phone conversation with Hendrix. *Id*. **at 58.** Jackson testified Phillips told her he would investigate the matter

---

[2] The facts are construed in the light most favorable to the nonmoving Plaintiff in this case. The graphic nature of this first September 2004 call can be found in Jackson's deposition and does not need to be repeated here. The remaining calls are also of a sexual nature. **Jackson Deposition, at 49-50.**

and talk with Hendrix, but she never heard from Phillips about whether he had in fact talked with Hendrix. *Id*. **at 59.** During her deposition, when asked what Jackson wanted Phillips to do about the situation, she replied she "just wanted it addressed" and she never wanted anything like that to happen again. *Id.* **at 59-60.** In June 2005, while Jackson and Hendrix were attending a managers' meeting, Jackson testified that Hendrix grabbed her breast in front of several people. She immediately informed Phillips about the incident and he replied, "Go sit down." *Id*. **at 60.**

These incidents were clearly considered severe or pervasive by Jackson. The remaining question to be resolved on summary judgment is whether a reasonable jury could find Hendrix's actions sufficiently severe or pervasive. ***See Ocheltree*, 335 F.3d at 333 (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 82 (1998) (finding that the consideration is what "a reasonable person in the plaintiff's position would find severely hostile or abusive.")).** The undersigned concludes that a reasonable jury could find, if they believe, for example, that Hendrix exposed himself to Jackson, that this conduct was severe. Therefore, the Court finds that Plaintiff has met its burden as to this element.

As to the remaining element, the Fourth Circuit has "repeatedly held that an employer cannot be held liable for isolated remarks of its employees unless the employer 'knew or should have known of the harassment, and took *no* effectual action to correct the situation.'" ***Spicer, supra,* at 710 (quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983))**. An employer may only be held liable if it is shown it had "'actual or constructive knowledge of the existence of a sexually hostile work environment and took *no* prompt and adequate remedial action.'" ***Id.* (quoting *Katz*, at 255)**.

In the present case, Jackson met with her district manager, Jimmy Phillips, on May 15, 2005, as part of his investigation into her complaint that Hendrix had allegedly exposed himself to her. **See Exhibit 3, Jimmy Phillips Notes Concerning Melissa Jackson's Complaint of Sexual Harassment, *attached to* Plaintiff's Memorandum, *supra*.** Jackson explained that Hendrix's conduct was unwelcome and when it happened she immediately told Hendrix to "put that thing away." *Id*. at 2. According to Phillips' notes, Jackson stated she could describe Hendrix's penis in detail and that she would be willing to take a polygraph. *Id.* Jackson also told Phillips she knew Hendrix had been making sexual comments to

Russell, another Arby's employee. *Id*. Phillips' notes indicate he had investigated that matter and issued Hendrix a written warning that any further substantiated claims of misconduct would be grounds for termination. *Id*.

Phillips' notes also indicate that he met with Hendrix on May 17, 2005, and discussed Jackson's accusation. *Id*. **at 3.** Hendrix denied exposing himself to Jackson. *Id*. When Phillips asked Hendrix how Jackson could accurately describe his penis, Hendrix responded that he had described it to her in detail during their conversations. *Id*. **at 3**. Phillips' notes indicate he informed Hendrix that if Jackson's allegation could be substantiated, he would be terminated. *Id*. Phillips' notes also indicate he phoned Jackson and told her about his interview with Hendrix; he also directed that she report any future misconduct to him immediately. *Id.*[3] Phillips' notes state that "all details given by [Jackson] have turned out to be purely circumstantial and I have been unable to substantiate that this alleged exposure happened." *Id*.

---

[3] Phillips' notes contradict Jackson's deposition testimony that Phillips never informed her of the results of his investigation. **See Jackson Deposition, at 59.**

Hendrix testified during his deposition regarding his meeting with Phillips about Jackson's allegations.  *See* **Exhibit 11, Deposition of Anthony Hendrix,** *attached to* **Plaintiff's Memorandum,** *supra,* **at 19-20.**  Hendrix denied he ever exposed his penis to Jackson, but admitted that he had described his penis to her in some detail.  *Id.* **at 28 (A: "She said I had a unique person."; Q: "And how would she know that?"; A: "I've told her.").**  Hendrix also testified that he and Jackson talked "about each other's sex life" as well as "[made] sexual jokes."  *Id.* **at 29.**

Defendant contends that Phillips, and therefore the Defendant employer, took prompt and remedial actions that were "'reasonably likely to prevent the offending conduct from reoccurring.'"  **Defendant's Objections,** *supra,* **at 18 (quoting** *Knabe v. Boury Corp.***, 114 F.3d 407, 414 (3d Cir. 1997)).**  On the contrary, the evidence viewed in the light most favorable to Plaintiff shows that Defendant took no corrective action to remedy Jackson's complaint.  In reviewing the facts set out above, Phillips knew that Hendrix, at the very least, had engaged in inappropriate behavior by describing his penis in detail to Jackson because Hendrix had admitted the same to Phillips in his investigation and under oath during his deposition.  **See Phillips Notes,** *supra;* **Hendrix Deposition,** *supra.*

Jackson explained to Phillips that she could describe Hendrix's penis in detail because he had exposed himself to her. There is conflicting testimony as to whether or not Hendrix exposed himself to Jackson; but at the very least, the facts show that any discussion or visual display of Hendrix's sexual anatomy was regarded as totally unwelcomed by Jackson. Therefore, Phillips, and hence Defendant employer, were on actual notice regarding the unwelcomed sexual conduct. Further, Jackson testified that after reporting Hendrix to Phillips for exposing himself, Hendrix "violated" her again. She testified that she and Hendrix attended a manager's meeting where, in front of several people, he grabbed her breast. **Jackson Deposition, *supra*.** She stated she immediately reported the incident to Phillips and was rebuffed. *Id.* **(A: "I went over to Jimmy [Phillips] and complained immediately."; Q: "And what was his response?"; A: "'Go sit down.'")**.

    Based on the facts as set out herein, there is a genuine issue of material fact as to whether Defendant took prompt and remedial action in light of Jackson's repeated complaints of continuing sexual harassment. Therefore, Plaintiff has carried its burden on this issue.

## C. Retaliation

Plaintiff has asserted a claim under Title I of the Civil Rights Act of 1991, contending that Defendant retaliated against Jackson after she engaged in activity protected under Title VII. **See Complaint, at 3.** To establish a *prima facie* case for retaliation a plaintiff must show: (1) that he or she engaged in a protected activity, (2) that an employer took an adverse action against him or her, and (3) that there is a causal connection between the protected activity and the adverse employment action. **See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 443 (4th Cir. 1998).** If a plaintiff demonstrates a *prima facie* case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* **at 442.** If the employer meets this burden, then the plaintiff must show that the employer's reason for the adverse employment action is nothing more than a pretext for retaliation. *Id*.

In the instant case, the Magistrate Judge found that Plaintiff had met the burden of showing a *prima facie* case and that her termination did constitute an adverse action. Defendant does not object to these findings. After a careful review of the record, the Court finds the Magistrate Judge's

proposed findings of fact are supported by the record and that the proposed conclusions of law are consistent with current case law and hereby adopts the conclusions of the Magistrate Judge in this regard. **See Memorandum and Recommendation,** *supra*, **at 25-27.**

With regard to the remaining considerations, Defendant contends that:

> [T]he defendant has articulated a legitimate, non-retaliatory reason for the challenged employment decision, to wit: Ms. Jackson's violation of the company's cash policy.

**Defendant's Objections,** *supra*, **at 20.** While it is true Defendant has presented evidence that Jackson failed to comply with Defendant's cash deposit procedures, Plaintiff has presented evidence that this reason was pretext for retaliation. There is evidence that Defendant was well aware of the late deposits before Jackson ever complained about sexual harassment. *See* **Jackson Deposition,** *supra*, **at 96, 104-105; Hendrix Deposition,** *supra*, **at 21-23, 52-53;** *see also* **Exhibit 12, Deposition of Jimmy Phillips,** *attached to* **Plaintiff's Memorandum,** *supra*, **at 73**. Additionally, Plaintiff offers evidence that Defendant was aware of a number of other violations of the cash deposit procedures and of more serious violations by other employees that resulted in discipline far less

severe than termination.  **See Exhibits 5, 6, 7, & 8,** *attached to* **Plaintiff's Memorandum.**

Plaintiff reported to Phillips about the incident of Hendrix exposing himself to her in mid-May 2005, and urged that action be taken.  Because Phillips could find no witness to corroborate Jackson's allegations, he took no remedial action with respect to her allegations even though he had warned Hendrix previously in connection with the Russell complaint that Hendrix would be terminated if the sexual harassment continued.  Then, after Hendrix allegedly grabbed Jackson's breast at the manager's meeting and she complained to Phillips, her complaint was ignored.  She then sent an e-mail to Phillips and JoAnn Yoder inquiring about the status of her complaint of Hendrix exposing himself to her.  Her e-mail makes clear that she did not want this incident brushed aside and that she had been made to feel she was the one at fault.  **See Exhibit 4, E-mail from Melissa Jackson to Jimmy Phillips and JoAnn Yoder, dated June 5, 2005,** *attached to* **Plaintiff's Memorandum,** *supra*.  Plaintiff was fired a couple of days after she sent this e-mail.  The evidence presented demonstrates there is a genuine issue of material fact as to whether Plaintiff's termination

was in fact for cause or was instead a pretext for retaliation. Therefore, Plaintiff has met its burden on this issue.

Having completed a *de novo* review of the specific issues set out above, the Court finds that Plaintiff has presented genuine issues of material fact on each element of the Title VII and Title I claims in regard to Melissa Jackson. Therefore, Defendant's objections to the Memorandum and Recommendation are overruled.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion for summary judgment on the Title VII claims concerning Holly Russell is **GRANTED**, and those claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment as to Plaintiff's remaining claims is **DENIED**.

Signed: October 14, 2008

Lacy H. Thornburg
United States District Judge